**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------

ACCELERANT PARTNERS, LLC,

                Plaintiff,

vs.

APPLIED FIBER HOLDINGS, LLC,

                Defendants.

---------------------------------

Case No. 1:21-cv-05014

**COMPLAINT**

Leslie D. Corwin
Duane Morris LLP
1540 Broadway
New York, New York 10036
(212) 692-1047
LDCorwin@duanemorris.com

*Attorneys for Plaintiff*
*Accelerant Partners, LLC*

Plaintiff Accelerant Partners, LLC ("Accelerant" or "Plaintiff"), for its complaint against Defendant Applied Fiber Holdings, LLC ("Applied Fiber" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. This is a straightforward breach of contract action in which the Defendant, Applied Fiber, benefited from Plaintiff Accelerant's contacts and expertise and then renounced its obligation to pay Accelerant at least $720,000 under a contract between the parties based on a tortured and baseless interpretation of the contract's terms.

2. Under the relevant contract, Accelerant was engaged as an advisor to assist Applied Fiber with the monetization of its assets through either an asset or stock sale, or a licensing of its assets such as its intellectual property. Over the course of nearly two years Accelerant, by and through its members Michael Borom ("Borom") and Michael Kirby ("Kirby") performed an extensive amount of work to achieve the monetization of Applied Fiber including, among other things, participating in strategy meetings with persons from Applied Fiber, assisting Applied Fiber with the redesign of its facility, creating ownership models for potential purchasers, creating a valuation model, setting up a data room, preparing pitch materials and pitching potential purchasers and investors, and following up with potential purchasers and investors after pitch meetings.

3. Critically, one of the potential purchasers Accelerant pitched was Bridon-Bekaert Ropes Group ("BBRG"), which ultimately entered into a transaction with Applied Fiber, whereby it licensed intellectual property from Applied Fiber. This transaction qualifies as a "sale transaction" under the contract between Applied Fiber and Accelerant such that Accelerant became entitled to compensation (quantifiable under the terms of the contract) for its assistance with the partial monetization of Applied Fiber.

4. Applied Fiber has taken the position that its licensing of intellectual property to BBRG does not qualify as a "sale transaction" so Accelerant is not entitled to any payment under the contract. As a result, Applied Fiber has steadfastly refused to comply with its obligation to pay to Accelerant its portion of Applied Fiber's monetization as is plainly required by the contract. Applied Fiber's position is baffling in light of the plain language of the contract and the fact that it is undisputed that Accelerant successfully pitched BBRG to achieve Applied Fiber's partial monetization.

5. Accelerant is entitled to the payment of at least $720,000 in accordance with the contract between the parties.

## THE PARTIES

6. Plaintiff Accelerant is a Delaware limited liability company with its principal place of business located at 8 Evergreen Avenue, Westport, Connecticut. Accelerant is a consulting and investment firm which focuses on accelerating strategies, solutions and liquidity for its clients in connection with control investments, minority investments, restructurings, turnarounds, operational enhancements and mergers and acquisitions.

7. Defendant Applied Fiber is a Florida corporation with its principal place of business located at 25 Garrett Drive, Havana, Florida. According to its website, Applied Fiber is the world's leading provider of terminated synthetic tension systems. It engineers and manufactures rope, cable, and cord assembly products, which create new structural alternatives for steel and high strength tension applications.

## JURISDICTION AND VENUE

8. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists because Plaintiff is a citizen of Delaware and Defendant is a citizen of Florida. The amount in controversy exceeds $75,000.

9. This court has personal jurisdiction over the Defendant because it conducts extensive business within the district, and, thus, has purposefully availed itself of the benefits of operating in this jurisdiction.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the parties agreed in the contract at issue that any dispute arising from the contract must be tried in the U.S. District Court for the Southern District of New York.

## STATEMENT OF FACTS

<u>The Initial Engagement Letter</u>

11. On or about April 18, 2018, Borom, the Managing Member of Accelerant Partners, entered into an agreement (the "Initial Agreement") with Applied Fiber pursuant to which Borom was exclusively engaged as an advisor "in connection with the possible monetization of the Company[1] through a sale or licensing of all or a portion of the assets of the Company."[2]

12. At the time Borom was a Managing Director at THL Partners, where he built the Operating Team and had been involved over the years in a wide range of operational and merger and acquisitions efforts spanning a wide range of industries.

13. Under the Initial Agreement, the work to be performed by Borom and his associate(s) included "performing financial analyses, providing strategic and operational advice to optimize value, searching for a purchaser acceptable to the Company, coordinating visits of potential purchasers and assisting the Company in negotiating the financial aspects of the transaction."

---

[1] The "Company" is defined as Applied Fiber, together with its subsidiaries and affiliates.

[2] Plaintiff is not attaching the contracts which are referenced in this Complaint because of confidentiality concerns, but will make copies available to the Court.

14. The Initial Agreement expressly stated that the fees Borom was to be paid were dependent upon the outcome of the assignment. In other words, the amount Borom was to be paid was directly dependent upon the amount of "Proceeds"[3] which the Company received from any transaction, whether it be a sale of Company stock or assets or licensing of Company assets. For example, if the Company received up to $30.1 million in Proceeds, Borom was entitled to a payment of $100,000, and for the next one half million in Proceeds above $30.1 million, Borom was entitled to 100% of the Proceeds.

15. For purposes of calculating the Proceeds, the amount the Company received in compensation from the sale, exchange or purchase of the Company's equity securities, the sale or disposition of Company assets, and licensing and manufacturing agreements were to be treated differently.

16. In the case of a sale, exchange or purchase of the Company's equity securities, the compensation was to be equal to the total consideration paid for the securities, plus the principal amount of all indebtedness for borrowed money.

17. In the case of a sale or disposition by the Company of assets, the compensation was to be equal to the total consideration paid for such assets, plus the net value of any current assets not sold by the Company and the principal amount of all indebtedness for borrowed money assumed by the purchaser.

18. In the case of licensing and manufacturing agreements, the compensation was to be equal to the total consideration paid for such agreements net of the cost to satisfy such agreement.

---

[3] "Proceeds" is defined as pre-tax compensation received by the Company, the shareholders of the Company, or any other parties receiving value associated with (i) the Company stock/asset sale or licensing of Company's assets, (ii) licensing agreements and/or (iii) manufacturing agreement entered into in conjunction with licensing agreements, before transaction expenses.

19. If the Proceeds in connection with any transaction were increased by payments related to future events, Borom was also entitled to his portion of the future payments.

20. The Company was also to reimburse Borom quarterly and upon the consummation of any transaction for reasonable expenses arising from the engagement.

21. In the event the Company terminated the Initial Agreement for any reason, Borom was still entitled to the applicable fees set forth in the Initial Agreement if within two years of the termination the Company entered into a sale of all or a portion of its stock or assets and the Company received payment in connection with such sale, or if the Company entered into a licensing agreement and received Proceeds therefrom.[4]

The Contract at Issue

22. On May 3, 2018, Borom, together with Kirby, incorporated Accelerant.

23. On June 24, 2019, Accelerant entered into an Engagement Letter with Applied Fiber (the "Contract") which superseded and replaced Borom's Initial Engagement Letter with Applied Fiber.

24. The terms of the Contract which are relevant in this action are the same as the terms in the Original Engagement Letter with two notable exceptions. First, the manner in which the fees to be paid to Accelerant upon a sale transaction[5] was different. Pursuant to the Contract, Accelerant was entitled to the following fees for engagement in the event the Company became entitled to Proceeds: a $400,000 retainer fee, plus $40,000 per month starting in July 1, 2019,

---

[4] This was subject to Borom's availability to render reasonable services to the Company during the two-year time period.

[5] As in the Initial Engagement Letter, there were different types of transactions which qualified as a transaction pursuant to which Accelerant would be entitled to payment of Proceeds: a sale of Company stock or assets or licensing of Company assets.

during which Accelerant was actively engaged with the Company.[6] Then, Accelerant was entitled to a $100,000 bonus if the Proceeds exceeded $30 million, and 8% of the Proceeds that exceed $30 million but are below $50 million, and 10% of all Proceeds in excess of $50 million.

25. Second, the Contract provides that the fee must be paid to Accelerant in cash as part of the distribution of Proceeds. Specifically, the $400,000 retainer fee and the $100,000 bonus (in the event the Proceeds exceed $30 million) were to be "cash only" and treated as a debt obligation at the time of the transaction. The remaining fees due to Accelerant, which were to be calculated as a percentage of the Proceeds, were to be paid in accordance with the Company's shareholder form, terms, and conditions.

26. The example for Accelerant's fee collection provided in the Contract is, if the Company received $60 million in Proceeds from a sale transaction, Accelerant would be entitled to the $400,000 retainer, plus a $100,000 bonus, plus 8% of $20 million ($1.6 million), plus 10% of $10 million ($1 million).

27. Both the Initial Engagement Letter and the Contract were signed by Borom and Richard Campbell, the President and CEO of Applied Fiber.

Borom's and Accelerant's Performance Under the Initial Engagement Letter and the Contract

28. Beginning in May 2018, Borom was actively engaged with the Company to facilitate the monetization of the Company through a sale or licensing of all or a portion of the Company's assets.

29. Borom's and Accelerant's engagement included, but was not limited to, participating in strategy sessions with the Company, creating ownership models for potential purchasers, assisting the Company with the redesign of its production facility, creating a

---

[6] Accelerant was to be considered "actively engaged" with the Company until the Company notified it, in writing, that its "active" services were no longer required.

valuation model, setting up a data room, preparing pitch materials and pitching potential purchasers and investors, and following up with potential purchasers and investors after pitch meetings.

30. Among the potential investors which Accelerant pitched was BBRG, a supplier of mission-critical advanced cords and ropes, to which Accelerant distributed materials regarding the Company on or about February 22, 2019, and delivered the pitch in New York City on or about March 29, 2019. Accelerant, working with members of Applied Fiber's team, put a substantial amount of time and effort into strategizing and preparing materials for the pitch meeting to show the synergies of Applied Fiber and BBRG and the potential benefits of such a transaction.

Applied Fiber's Breach of the Contract

31. On March 3, 2020, Applied Fiber notified Accelerant that it was no longer actively pursuing a sale and, therefore, no longer required Accelerant's services.

32. On November 20, 2020, Applied Fiber and BBRG signed a technology licensing agreement pursuant to which Applied Fiber licensed its patented high-capacity fiber rope termination technology to BBRG, which would use the technology to produce high strength fiber rope assemblies for mining, offshore and industrial lifting markets. Applied Fiber and BBRG also agreed to collaborate to further develop the technology for new applications.

33. Applied Fiber's transaction with BBRG triggered Applied Fiber's payment obligations to Accelerant under the Contract.

34. On November 25, 2020, Kirby of Accelerant sent to Richard Campbell of Applied Fiber a letter seeking payment pursuant to the Contract (the "Demand Letter"). A copy of the Demand Letter is attached as **Exhibit A**.

35. Specifically, the Demand Letter sought the payment of the fees specifically referenced at page 1 of the Contract: 1) the $400,000 retainer fee, and 2) the $40,000 monthly fee starting July 1, 2019.  The Demand Letter further noted that pursuant to the Contract these fees were to be paid to Accelerant in cash, and that in the case of licensing and manufacturing agreements the compensation was to be equal to the total consideration paid for such agreements net of the cost to satisfy such agreement, and that amounts paid into escrow and contingent payments made in connection with any transaction are included as part of the aggregate consideration due to Accelerant.

36. Accordingly, Accelerant demanded the total amount of $720,000 in connection with the services it performed for Applied Fiber pursuant to the Contract – the $400,000 retainer fee, plus the $40,000 monthly fee from July 1, 2019 through mid-March 2020, for a total of $320,000.  Accelerant also informed Applied Fiber that pursuant to the Contract, that $720,000 was then a debt obligation which must be satisfied within thirty (30) days of the date of the Demand Letter.

37. The $720,000 was not paid within 30 days as required.

38. Accelerant did not receive any substantive response until February 9, 2021, when Richard Campbell responded to the Demand Letter and denied that Applied Fiber owed any payment to Accelerant under the Contract in connection with the licensing transaction Applied Fiber entered into with BBRG.  Specifically, Campbell denied that Applied Fiber's transaction with BBRG constituted a "sale of the company," which he claimed was the only circumstance under which Accelerant was entitled to payment pursuant to the Contract.  A copy of Applied Fiber's response to the Demand Letter is attached as **Exhibit B**.

39. On April 21, 2021, counsel for Accelerant sent to Campbell of Applied Fiber a second demand letter (the "Second Demand Letter") seeking payment under the Contract in the

amount of $720,000.  A copy of the Second Demand Letter is attached as **Exhibit C**.

40. On May 4, 2021, an attorney from White & Case LLP, who stated that she had been retained to represent Applied Fiber in connection with this dispute, sent Accelerant's counsel an email indicating that she would respond to the Demand Letter.

41. On May 18, 2021, counsel for Applied Fiber sent to Accelerant's counsel a letter in response to the Demand Letter and the Second Demand Letter (the "Response") denying that Applied Fiber owes any payment to Accelerant pursuant to the Contract.  A copy of the Response is attached as **Exhibit D**.

42. To date, Accelerant has not received payment in any amount pursuant to the Contract.

## COUNT I

### (Breach of Contract)

43. Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 42 as if fully set forth herein.

44. The Initial Engagement Letter and the Contract between Borom and Accelerant on the one hand and Applied Fiber on the other are valid and enforceable contracts.

45. First Borom and then Accelerant performed these services for Applied Fiber from on or about April 18, 2018 through and including mid-March 2020 under the contracts by, among other things, participating in strategy sessions with the Company, assisting the company with the redesign of its production facility, creating ownership models for potential purchasers, creating a valuation model, setting up a data room, preparing pitch materials and pitching potential purchasers and investors including BBRG, and following up with potential purchasers and investors after pitch meetings, all in furtherance of the Company's sale or licensing of its assets, including its intellectual property relating to technology it developed.

46. On November 20, 2020, Applied Fiber licensed its patented high-capacity fiber rope termination technology to BBRG, to which Borom and then Accelerant had pitched Applied Fiber, and which planned to use the technology to produce high strength fiber rope assemblies for mining, offshore and industrial lifting markets.

47. This transaction triggered the payment provisions in the Contract described above, and entitled Accelerant to a payment in the amount of at least $720,000.

48. In material breach of the Contract, Applied Fiber has refused to make payment of any amount to Accelerant.

49. As a direct and proximate result, Accelerant has sustained damages in the amount of at least $720,000.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For actual and compensatory damages in the amount of at least $720,000;

2. For attorneys' fees and costs as permitted by applicable law;

3. For pre-judgment and post-judgment interest at the maximum legal rate; and

4. For such other and further relief as the Court may deem just and proper.

DATED: June 7, 2021
New York, New York

Respectfully Submitted,

**DUANE MORRIS LLP**

By: /s/ Leslie D. Corwin
Leslie D. Corwin
1540 Broadway
New York, New York 10036
Tel: (212) 692-1047
Fax: (212) 692-1020
LDCorwin@duanemorris.com
*Attorneys for Plaintiff Accelerant Partners,*